UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JESSICA DIANE PERKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  2:24 CV 27 CDP |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Jessica Diane Perkins brings this action under 42 U.S.C. § 405 seeking judicial review of the Commissioner's final decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*  Because the Commissioner's final decision is supported by substantial evidence on the record as a whole and contains no legal error, I will affirm the decision.

## **Procedural History**

On December 2, 2020, the Social Security Administration (SSA) initially denied Perkins' June 2020 application for DIB in which she claimed she became

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted as the proper party defendant in this action.

disabled on March 16, 2016, because of visual impairment, fibromyalgia, depression, anxiety, headaches, joint pain, nerve pain, back issues, and numbness in her extremities.  The SSA denied reconsideration on January 29, 2021.  After a hearing, an administrative law judge (ALJ) denied Perkins' claim for benefits on January 11, 2022.  On October 7, 2022, the Appeals Council granted Perkins' request for review of the ALJ's decision and remanded the matter back to the ALJ to evaluate Perkins' statements of symptoms and additional evidence of record, and to provide appropriate rationale in determining Perkins' residual functional capacity (RFC) based on the evidence of record.  On remand, the ALJ held a supplemental hearing on June 8, 2023, and entered a decision on November 28, 2023, again denying Perkins' claim for benefits.  The Appeals Council denied Perkins' request for review on January 5, 2024.  The ALJ's November 2023 decision is thus the final decision of the Commissioner.

In this action for judicial review, Perkins claims that the ALJ's analysis of her treating physician's mental health opinion failed to comply with the procedure set out in the Regulations and was not supported by substantial evidence on the record as a whole.  Perkins also contends that the ALJ erred in failing to incorporate into the RFC the physician's opined mental limitations that the ALJ

found persuasive.[2]   Perkins requests that I reverse the final decision and remand the matter to the Commissioner for further proceedings.

Because the ALJ committed no legal error in evaluating the medical opinion evidence at issue, and her related analysis and RFC are supported by substantial evidence on the record as a whole, I will affirm the final decision of the Commissioner.

**Medical Records and Other Evidence Before the ALJ**

With respect to medical records and other evidence of record, I adopt Perkins' recitation of facts set forth in her Statement of Uncontroverted Material Facts (ECF 8-1) to the extent they are admitted and clarified by the Commissioner (ECF 9-1).  I also adopt the Commissioner's Statement of Additional Material Facts (ECF 9-2), which Perkins does not dispute.  These statements provide a fair and accurate description of the relevant record before the Court.  Additional specific facts are discussed as needed to address the parties' arguments.

**Discussion**

A.   Legal Standard

To be eligible for DIB under the Social Security Act, Perkins must prove that she is disabled and that her disability began before her insured status expired.

---

[2] Perkins does not challenge the ALJ's treatment of or findings related to evidence of her physical impairments, limitations, or RFC.

*Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Walker v. Colvin*, 124 F. Supp. 3d 918, 932 (E.D. Mo. 2015).  The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past

relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

I must affirm the Commissioner's decision if it is not based on legal error and there is substantial evidence on the record as a whole to support the conclusion. *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.   The ALJ's Decision

The ALJ found that Perkins met the insured status requirements of the Social Security Act through December 31, 2022, and had not engaged in substantial gainful activity since March 16, 2016, the alleged onset date of disability. The ALJ found that Perkins' cervical spondylosis status post remote anterior cervical discectomy fusion, fibromyalgia, chronic pain syndrome, occipital neuralgia with migraine, Lyme disease, facet arthropathy of the lumbar spine from L4-S1 with mild sacroiliac joint osteoarthritis, depression, and anxiety were severe impairments but that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20-21.) The ALJ found that Perkins had the RFC to perform light work with various exertional limitations. As relevant here, the ALJ further found that Perkins

>can maintain the concentration required to perform simple routine tasks, remember work procedures, and make simple work-related decisions. She cannot work at a fast pace such as an assembly line but can stay on task and meet reasonable production requirements in an environment that allows her to maintain a flexible and goal-oriented pace. She is further limited to work that requires only occasional changes in the work setting which are introduced gradually. She can have occasional interaction with co-workers, supervisors, and the public.

(Tr. 24.) The ALJ concluded that Perkins' RFC prevented her from performing her past relevant work as a livestock farm worker and heating element winder through the date last insured. (Tr. 32.)

Considering Perkins' RFC, age, education, and transferability of job skills, the ALJ found vocational expert testimony to support a conclusion that Perkins could perform work as it exists in significant numbers in the national economy, and specifically as an inspector and hand packager, mail clerk, and electronics worker. The ALJ thus found that Perkins was not under a disability from March 16, 2016, through the date last insured. (Tr. 33-34.)

C.   Consideration of Medical Opinion Evidence

Perkins filed her application for benefits after March 2017. Accordingly, the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under this Regulation, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant,

specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies and their familiarity with other evidence in the claim. 20 C.F.R. § 404.1520c(c). ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [she] considered the supportability and consistency factors . . . in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in Regulation, as failure to comply with opinion-evaluation Regulation was legal error)). *See also Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021). ALJs need not explain in their decision how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

Here, Perkins challenges the ALJ'S treatment given to the Mental Medical

Source Statement (Mental MSS) completed in May 2021 by Perkins' primary care physician, Dr. Mary Crawford. In that Statement, Dr. Crawford stated that Perkins was diagnosed with depression and mental exhaustion and that she experienced the following limitations in the following domains of functioning:

    A)  Understanding and Memory – mild limitations in her ability to remember locations and work-like procedures and in her ability to understand and remember very short and simple instructions, and moderate limitations in her ability to understand and remember detailed instructions.

    B)  Sustained Concentration and Persistence – mild limitations in her ability to carry out very short and simple instructions; moderate limitations in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to sustain an ordinary work routine without special supervision, to work in coordination with or proximity to others without being distracted by them, and to make simple work-related decisions; marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and extreme limitations in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

    C)  Social Interaction – mild limitations in her ability to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and marked limitations in her ability to interact appropriately with the general public.

    D)  Adaptation – moderate limitations in her ability to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others.

(Tr. 628-29.) Dr. Crawford provided no narrative with the Mental MSS, but she

circled preprinted acknowledgements that her opinions were based on medical history, clinical findings, diagnoses, and prescribed treatment response and prognosis. (Tr. 629.)

The ALJ found Dr. Crawford's opinions somewhat persuasive. The ALJ noted, first, that the opinions were not supported by Dr. Crawford's own treatment notes, as the notes merely reflected Perkins' subjective reports. The ALJ also noted that Dr. Crawford's opinions were inconsistent with evidence from other sources, citing several medical records that noted Perkins' generally appropriate mood and affect, normal insight, and normal judgment. The ALJ also referred to the February 2020 report of Dr. Linda Schultz, a consultative examiner, who concluded that Perkins' mental limitations were largely attributable to her physical symptoms. The ALJ concluded that the record was more consistent with Perkins having no more than moderate mental limitations. (Tr. 31-32.)

Perkins complains that the ALJ's analysis of Dr. Crawford's Mental MSS is legally insufficient because the ALJ failed to explain the supportability or consistency factors in evaluating the persuasiveness of the opinion. I disagree.

As to supportability, the Regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The ALJ here

explained that Dr. Crawford's Mental MSS was not supported by her own treatment records and appeared to be based on Perkins' subjective complaints. Those are sufficient reasons to discount a physician's opinions, even those of a treating physician. *See Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (ALJ may discount physician's opinion that was largely based on claimant's subjective complaints and not on physician's objective findings); *Buckman v. Astrue*, No. 2:11CV56MLM, 2012 WL 3596186, at *13 (E.D. Mo. Aug. 21, 2012) (proper for ALJ to consider that treatment notes were silent as to marked restriction identified in Medical Source Statement) (citing *Hackner v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006)). Substantial evidence on the record as a whole supports the ALJ's conclusion.

Dr. Crawford provided no objective medical evidence to support the opined limitations set out in the Mental MSS – including and especially the marked and extreme limitations – and her treatment notes reveal none. Dr. Crawford first saw Perkins in August 2019 for complaints of pain. She noted at that time that Perkins had no psychological issues but was emotional about the pain. (Tr. 695.) Dr. Crawford saw Perkins about 30 more times through March 2023. On most visits, mental status examinations were unremarkable and Perkins had no complaints of depression, anxiety, or crying spells. (*E.g.*, Tr. 636, 639, 799, 805, 814, 816.) On those occasions when Perkins reported that she experienced such symptoms, Dr.

Crawford provided no analysis or treatment. (*E.g.*, Tr. 638, 645, 803, 812.) Moreover, throughout Dr. Crawford's extensive treatment of Perkins, she repeatedly and consistently noted Perkins' diagnosed conditions of chronic pain and fibromyalgia, but she included depression and/or anxiety on only three visits – once in March 2021 (Tr. 641) and twice in March 2022. (Tr. 811, 812.) Notably, in a letter to the SSA dated August 3, 2021, Dr. Crawford's list of Perkins' impairments did not include any mental health impairment or limitations. (Tr. 651.) In view of this record, the ALJ's explanation that Dr. Crawford failed to provide support for her opinions is supported by substantial evidence on the record as a whole.

The same is true for the consistency factor. "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ explained that contrary to some of Dr. Crawford's opinions, the evidence of record was consistent with no more than moderate limitations, with such evidence including observations by other medical sources that Perkins' mood and affect were appropriate, that she exhibited normal judgment, and that her limitations were largely attributable to her physical impairments. (Tr. 31-32.) Substantial evidence on the record as a whole supports the ALJ's conclusion.

In November 2019 during a neurology exam, Perkins had no psychological complaints.  (Tr. 712.)  In January 2020, she reported experiencing "some" anxiousness but complained primarily of her fibromyalgia symptoms.  (Tr. 724.)  During consultative examinations in February 2020, Perkins was in no acute distress, had an appropriate mood and clear thought process, was alert and oriented, and had good concentration and normal memory.  One examiner, Dr. Kelley Sandri, noted that there was no evidence to either support or dispute Perkins' claims of anxiety and depression, noting specifically that the exam was not significant for any abnormal thought process or content and that Perkins interacted appropriately and followed directions with no difficulty.  (Tr. 726-29.)  Another examiner, Dr. Schultz, noted that Perkins had a normal mental status examination and had appropriate social skills.  She concluded that Perkins could understand and follow simple instructions but would have difficulty doing the tasks; had social skills and good support from family and friends; had issues with concentration and focus and was slower with her persistence and pace; and was able to adapt and manage herself.  (Tr. 736-37.)  During a neurological follow-up in September 2020, Perkins reported having decreased stress, and she was noted to be alert and active.  The plan was to wean her from Cymbalta.[3]  (Tr. 633.)

---

[3] Perkins testified at the October 2021 administrative hearing that while Cymbalta is a medication for depression and anxiety, she takes the medication for nerve dysfunction related to

As cited by the ALJ, several mental status examinations by other physicians – including neurological, orthopedic, and pain management specialists in 2021 and 2022 – generally yielded normal results, with notes that Perkins had a cooperative nature, intact memory and judgment, and appropriate mood and affect.  She also visited a psychological specialist for chronic pain in December 2021, who noted that Perkins had moderate symptoms of depression but a normal mental status examination.  (Tr. 860.)  In May 2022, Perkins reported to the psychologist that she was not too stressed, was very active during the day, walked a lot while engaging in tasks, and anticipated a very busy summer schedule with her daughter.  (Tr. 822, 881.)  In view of the above, the ALJ's explanation that evidence from other medical sources was consistent with a finding that Perkins' mental impairments imposed no more than moderate limitations in functioning, which was inconsistent with Dr. Crawford's findings of marked and extreme limitations, is supported by substantial evidence on the record as a whole.

Although I agree with Perkins that the ALJ's written analysis of Dr. Crawford's Mental MSS is not the model of clarity, the ALJ nevertheless adequately explained the supportability and consistency factors in her consideration of Dr. Crawford's Mental MSS.  An arguable deficiency in opinion-

---

fibromyalgia.  (Tr. 76-77.)  She also testified that taking Cymbalta constituted her treatment for anxiety and depression.  (Tr. 78.)

writing technique is not a basis for remand if it has no bearing on the outcome. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021). "An ALJ's reasoning need only be 'clear enough to allow for appropriate judicial review.'" *Id.* (quoting *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019)).

D.     Mental Limitations in RFC

Perkins contends that the ALJ failed to include in the RFC any mental limitations as opined by Dr. Crawford that the ALJ considered persuasive. I disagree.

As set out above, the ALJ found that the record supported the finding that Perkins experienced no more than moderate mental limitations. Dr. Crawford's Mental MSS identified several mild to moderate limitations that the ALJ incorporated into the RFC determination, including limitations to simple work and simple work-related decisions, maintaining an ordinary routine at a flexible and goal-oriented pace with no requirement for fast-paced work, occasional changes in the work setting introduced gradually, and occasional interaction with workers and supervisors. (*Compare* Tr. 628-29 *with* Tr. 24.) Perkins' assertion that the RFC contained none of Dr. Crawford's opined limitations is contrary to the record.

E.     Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the

record as a whole.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).  "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion."  *Id.*  Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  *Id.  See also Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above on the claims Perkins raises on this appeal, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination.  Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed.  *Davis,* 239 F.3d at 966.  I cannot reverse the decision even if substantial evidence may support a different outcome.  *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir. 2007) (even with "full awareness" of the "very real difficulties [claimant] appears to experience," the Court cannot reverse a decision that is based on substantial evidence).

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and plaintiff Jessica Diane Perkins' complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of January, 2025.